UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PAUL V. MARSHALL and**  Chapter 13
**KATHLEEN KENNEY-MARSHALL,**  Case No. 08-16022-JNF
    Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Trustee's Objection to Debtors' Amended Chapter 13 Plan." The Debtors, Paul V. Marshall and Kathleen Kenney-Marshall (the "Debtors"), filed a Response to the Trustee's Objection to confirmation of their amended Chapter 13 plan, and the Court held a hearing on the contested matter on March 5, 2009. At the conclusion of the hearing, the Court directed and the parties agreed to file an Agreed Statement of Facts and briefs by April 24, 2009[1] on the issue of whether the above-median income Debtors in this case may deduct, on Official Form 22C, payments that are "contractually due" to a junior mortgagee pursuant to 11 U.S.C. §§ 1325(b)(3) and 707(b)(2)(A)(iii)(I) for purposes of calculating their monthly disposable income where they intend to seek a determination that the debt owed to the junior mortgagee is unsupported

---

[1] The parties timely filed the Agreed Statement of Facts. The Chapter 13 Trustee timely filed her memorandum. Debtors' counsel did not file a memorandum until after the issuance of an order to show cause why the Debtors' Chapter 13 case should not be dismissed for failure to abide an order of the Court. *See* 11 U.S.C. § 109(g)(1).

1

by any equity in their property and, thus, its lien is voidable and its claim unsecured pursuant to 11 U.S.C. § 506(a) and (d). *See* In re Pelosi, 382 B.R. 582 (Bankr. D. Mass. 2008).

There being no genuine issues of material fact, the matter is ripe for adjudication.

**II. FACTS**

The Debtors filed a Chapter 13 petition on August 12, 2008. The next day, the Court issued an "Order to Update," requiring the Debtors to file Schedules, a Statement of Financial Affairs, a Chapter 13 plan, Official Form 22C and other documents on or before August 28, 2008. The Debtors failed to file the requisite documents by the deadline imposed by the Court. Rather, on September 2, 2008, they filed a Motion to Extend Time to File Required Documents, seeking a two week extension of time to file documents. *See* 11 U.S.C. § 521(a); Fed. R. Bankr. P. 3015(b). The Debtors failed to file all required documents and their Chapter 13 plan within the requested time, although they filed some documents one day late. Accordingly, the Court, on September 24, 2008, dismissed the Debtors' Chapter 13 case, citing their failure to file evidence of current and sufficient liability insurance.

On October 6, 2008, the Debtors filed evidence that their property was properly insured, as well as a Motion to Vacate Order of Dismissal. The Court granted their Motion on October 6, 2008, but the Debtors' case was dismissed again on December 30, 2008 because they failed to produce other documents requested by the Chapter 13 Trustee and to comply with an order of the Court, dated December 15, 2008, requiring them to file an affidavit, on or before December 29, 2008, stating that they had produced or filed the

documents sought by the Chapter 13 Trustee.

On January 9, 2009, the Debtors filed their second Motion to Vacate Order of Dismissal, as well as amended Schedules B, D, E, I, and J and an amended Official Form 22C. On January 12, 2009, the Court granted the Debtors' Motion to Vacate and reinstated their Chapter 13 case.

On Schedule A-Real Property, the Debtors listed their residence located at 88 Liberty Street, Randolph, Massachusetts (the "Property") with a value of $300,000. On Amended Schedule D-Creditors Holding Secured Claims, the Debtors listed "CitiMortgage" as the holder of a claim in the sum of $311,000 secured by a first mortgage on their Property and Chase Manhattan Bank as the holder of a claim in the sum of $64,561 based upon a home equity line of credit secured by a second mortgage on the Property.

On December 14, 2008, JP Morgan Chase Bank, N.A. timely filed a proof of claim in the sum of $65,028.21. It attached to its proof of claim a Home Equity Line of Credit Agreement and Disclosure Statement executed by the Debtors, as well as a Home Equity Line of Credit Mortgage executed by the Debtors. Accordingly, JP Morgan Chase Bank ("Chase"), not Chase Manhattan Bank, is the actual holder of the claim.

On January 14, 2009, the Debtors filed an amended, 60-month Chapter 13 plan to which the Chapter 13 Trustee filed the Objection which is now before the Court. Through their amended Chapter 13 plan, the Debtors proposed to make monthly plan payments in the sum of $1,018.[2] Specifically, they proposed to pay priority claims, totaling $10,019.13,

---

[2] The Debtors' Schedules I and J reveal monthly net income of $1,114.22.

in full and to pay a 26.72% dividend to unsecured creditors with claims totaling $168,236.33.[3] According to the Debtors' amended Chapter 13 plan, the class of unsecured creditors is comprised of general unsecured creditors with claims totaling $103,675.33 and Chase with a claim in the sum of $64,561. The Debtors characterized Chase's claim as an unsecured claim arising after "lien avoidance/cramdown."

On the same day that the Debtors filed their amended Chapter 13 plan, they objected to the secured status, but not the amount, of Chase's claim, relying upon Mann v. Domestic Bank (In re Mann), 249 B.R. 831 (B.A.P. 1st Cir. 2000), and In re Pelosi, 382 B.R. 582 (Bankr. D. Mass. 2008). On May 6, 2009, in the absence of a response from Chase, the Court sustained the Debtors' Objection to Chase's claim.

On amended Form 22C, the Debtors disclosed that they have a combined monthly income of $11,160.52. On Line 47 concerning future payments on secured claims,[4] the Debtors listed payments to three creditors as follows:

---

[3] The Debtors listed $102,895.33 in unsecured debt on Schedule F and understated the amount of Chase's claim in their amended Chapter 13 plan. The Claims Register shows unsecured claims in the total amount of $107,145.81. The Debtors' amended Chapter 13 plan does not reflect that their counsel reviewed the claims register before filing the plan.

[4] Official Form 22C provides in relevant part:

For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60.

4

|    | Name of Creditor | Property Securing the Debt | Average Monthly Payment | Does Payment Include taxes or insurance? |    |
| --- | --- | --- | --- | --- | --- |
| a. | CitiMortgage | Residence | $2,299.00 | No | |
| b. | Chase Manhattan Bank [sic] | Single Family House | $301.00 | No | |
| c. | Toyota Motor Credit | Automobile (1) | $394.23 | No | |
|    | Total: Add lines a, b, and c. | | | | $2,994.23 |

On Line 59, the Debtors calculated their monthly disposable income under 11 U.S.C. § 1325(b) as $1,017.73, rounded to $1,018, the amount of their monthly plan payment. The parties agree that, if the Debtors were required to eliminate the $301 per month secured claim deduction on Form 22C attributable to Chase's claim, their monthly disposable income for plan purposes would be $1,318.73, rounded to $1,319.

**III. POSITIONS OF THE PARTIES**

    A. The Chapter 13 Trustee

In her Objection, the Chapter 13 Trustee contends that the Debtors' amended Chapter 13 plan is miscalculated. Further, she maintains that, if the Debtors are paying Chase's claim as an unsecured claim, they should not be entitled to claim the expense deduction for secured claims on Form 22C for purposes of calculating their plan payment. She cites, *inter alia*, United States Trustee v. Rudler (In re Rudler), 388 B.R. 433, 438 n.6 (B.A.P. 1st Cir. 2008), In re Hoss, 392 B.R. 463 (Bankr. D. Kan. 2008), and In re Gonzalez, 388 B.R. 292 (Bankr. S. D. Tex. 2008), in support of her position. The Chapter 13 Trustee also

asserts that the Debtors' amended Chapter 13 plan was not filed in good faith, and extraordinary circumstances exist that require further inquiry into the Debtors' expense deduction for a wholly unsecured junior mortgage to Chase. *Cf.* In re Phillips, 382 B.R. 153, 172-73 (Bankr. D. Mass. 2008).

### B. The Debtors

The Debtors admit that their amended Chapter 13 plan is miscalculated and that they must file a further amended plan. With respect to the issue of the expense deduction, they also rely upon the decision in In re Rudler, 388 B.R. 433 (B.A.P. 1st Cir. 2008), as well as In re Willette, 395 B.R. 308, 325-28 (Bankr. D. Vt. 2008), and In re Quigley, 391 B.R. 294 (Bankr. N.D.W.Va. 2008). The Debtors also assert that their amended Chapter 13 plan was filed in good faith and that no extraordinary circumstances exist which would warrant disallowance of the deduction, particularly as their Schedules I and J mirror the disposable income calculation on Form 22C.

## IV. DISCUSSION

For purposes of this decision, the Court finds that a determination that Chase's claim is unsecured has the same practical effect as a surrender of property to a mortgagee. In both instances, debtors are no longer required to make monthly payments to secured creditors. Accordingly, the decisions involving surrender of secured property are apposite to the issue before the Court.

Two recent decisions in this circuit, In re Rudler, and In re Burbank, 401 B.R. 67 (Bankr. D. R.I. 2009), *appeal docketed* No. 09-1776 (1st Cir. June 3, 2009), contain

6

comprehensive and thoughtful evaluations of the pressing issue before the Court, including detailed analyses of the relevant section of the Bankruptcy Code, namely 11 U.S.C. § 707(b)(2)(A)(iii),[5] which is made applicable to Chapter 13 cases by § 1325(b)(3).[6]

---

[5] Section 707(b)(2) provides in relevant part:

(B)(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
> (II) $10,950. . . .

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . .

> (III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees. . . .

(iii) The debtor's average monthly payments on account of *secured debts* shall be calculated as the sum of--

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

7

Moreover, both decisions have been appealed to the United States Court of Appeals for the

---

> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60. . . .

11 U.S.C. § 707(b)(2)(A)(emphasis added).

> [6] Section 1325(b) provides in relevant part the following:
>
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, *the term "disposable income"* means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended– . . .
>
> (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), *shall be determined* in accordance with subparagraphs (A) and (B) of section 707(b)(2) if [the debtor is an above median income debtor] . . . .

11 U.S.C. § 1325(b)(emphasis supplied).

First Circuit. Indeed, as noted above, the First Circuit accepted direct review of the Burbank decision on June 3, 2009 pursuant to a Certification of Direct Appeal to Court of Appeals signed by Bankruptcy Judge Votolato. *See also* Morse v. Rudler (In re Rudler), No. 08-9007 (1st Cir. argued Jan. 5, 2009).

In Rudler, a decision involving two Chapter 7 cases which the U.S. trustee moved to dismiss for substantial abuse, *see* 11 U.S.C. § 707(b)(2), the United States Bankruptcy Appellate Panel for the First Circuit considered the issue of whether, in calculating "means test" eligibility, it is permissible to deduct payments due to secured creditors when the debtor intends to surrender the secured property. 388 B.R. at 435. With reference to section 707(b)(2)(A)(iii), Judge Votolato, writing for the Panel, concluded:

> Regardless of a debtor's intention to surrender property, the fact remains that payments are "contractually due." And those amounts remain contractually due, regardless of whether said payments will actually be made, whether the debtor will reaffirm the debt, or whether the debtor will surrender the property to the secured party.
>
> The phrase "scheduled as contractually due" is modified by the remaining statutory language, "in each of the 60 months following the date of the petition," which must be read consistently with the preceding language of the statute. Though the UST stresses the "forward-looking" nature of the term "following," we disagree that this somehow suggests that only those payments that will actually be made may be considered. Rather, we conclude that a "snap-shot" of the debtor's situation as of the petition date is a more appropriate approach, given the plain language of the statute. If Congress had intended otherwise, it could easily have said that the only deductible payments are those that the debtor intends to reaffirm. It is neither our function nor within our authority to infer such intent.

Id. at 438 (citations omitted, footnote omitted). Judge Votolato observed in a footnote, however, that "application of the means test in Chapter 7 and Chapter 13 differs." He

9

noted that the Panel in <u>Kibbe v. Sumski (In re Kibbe)</u>, 361 B.R. 302 (B.A.P. 1st Cir. 2007), determined that "the term 'projected disposable income,' within the context of how much should a debtor pay in a Chapter 13 plan, is forward looking and based on reality." <u>Rudler</u>, 388 B.R. at 438 n.6 (citing <u>In re Nockerts</u>, 357 B.R. 497, 504 (Bankr. E.D. Wis. 2006) and <u>In re Crittendon</u>, No. 06-10322-C-13G, 2006 WL 2547102 (Bankr. M.D.N.C. Sept.1, 2006)).

In the context of a Chapter 13 case in <u>Burbank</u>, Judge Votolato considered whether above-median income debtors can deduct payments for a debt secured by a mortgage on real property which they intended to surrender in their Chapter 13 case. He noted the "'legal conundrum produced by Congress' injection into the chapter 13 "projected disposable income" test certain aspects of the chapter 7 means test for determining abuse.'" 401 B.R. at 72 (citing <u>In re Hoss</u>, 392 B.R. 463, 466 (Bankr. D. Kan. 2008)). Similarly, the Bankruptcy Appellate Panel for the Sixth Circuit in <u>Hildebrand v. Thomas (In re Thomas)</u>, 395 B.R. 914, 920 (B.A.P. 6th Cir. 2008), observed:

> [T]he question of whether a debtor in a chapter 13 case should be permitted to claim a deduction for collateral the debtor intends to surrender is not so easily resolved [as in a Chapter 7 case]. The difficulty arises because the requirement that a debtor calculate the debtor's "average monthly payments on account of secured debts" applies only in the calculation of disposable income under the means test and Congress gave no instruction as to how to integrate the chapter 7 "means test" into the calculation of *projected* disposable income as set forth in § 1325(b)(1).

395 B.R. at 920 (emphasis supplied).

Although the Panel in <u>Rudler</u> intimated that application of the means test may differ in Chapter 7 and Chapter 13, Judge Votolato in <u>Burbank</u> permitted the above-median income debtors to utilize the secured debt deduction to determine their Chapter 13 plan

10

payment. He stated:

> Despite this multiplicity of results, theories, and rationales, the divide boils down, effectively, to two approaches we will call the "realistic" approach and the "mechanistic" approach. Two appeals courts considering the issue, vis-a-vis Chapter 13, have come to opposite results. The realistic approach was taken by the Eighth Circuit in <u>Frederickson</u>, concluding that the means test is only a starting point for determining the Chapter 13 debtor's disposable income. [<u>Coop v. Frederickson (In re Frederickson)</u>,] 545 F.3d [652]at 659 [8th Cir. 2008]. "[T]he final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J." <u>Id.</u> This position has considerable support, as it takes into account the actual income and expenses of the debtor at the time of confirmation.
>
> Despite its broad appeal and following, however, there is also a fair amount of opposition to the <u>Frederickson</u> (realistic) approach. The Ninth Circuit has held that "projected disposable income" is not a forward-looking concept, <u>In re Kagenveama</u>, 541 F.3d 868, 871-872 (9th Cir.2008). It stated that the term "projected" modifies "disposable income" and is not synonymous with the word "anticipated" in this context. <u>Id.</u> at 874. "Projected disposable income" means "disposable income," as defined by Section 1325(b)(2), projected over the "applicable commitment period." <u>Id.</u> at 872. In turn, for debtors with above median income, the "amounts reasonably necessary to be expended" are determined in accordance with Section 707(b)(2). <u>Id.</u> at 872 n. 1. Thus, "BAPCPA replaced the old definition of what was 'reasonably necessary' with a formulaic approach for above-median debtors." <u>Id.</u> at 873 n. 2.

<u>Burbank</u>, 401 B.R. at 73-74 (footnotes omitted).

The court in <u>Burbank</u> adopted the holding of the Ninth Circuit in <u>Maney v. Kagenveama (In re Kagenveama)</u>, 541 F.3d 868 (9th Cir. 2008). While recognizing that the result is unfavorable to unsecured creditors, it concluded that it was bound to follow the plain language of the statute, which does not produce an absurd result. <u>Burbank</u>, 401 B.R. at 74-75 (citing <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534 (2004), and <u>Kagenveama</u>, 541 F.3d at 875). The bankruptcy court was not unmindful of the decision in <u>Kibbe v. Sumski (In re</u>

11

Kibbe), 361 B.R. 302 (B.A.P. 1st Cir. 2007), in which the Panel adopted the realistic approach. It distinguished Kibbe, however, stating the following:

> . . . Kibbe differs from the present case in two important respects: (1) the debtor in Kibbe was a below-median income debtor, and (2) that court dealt with the income component of the means test, whereas we are concerned with the expense component. The Panel in Kibbe specifically acknowledged that it did not address the "expense component of the 'projected disposable income' calculation." Id. at 307 n. 6.

Burbank, 401 B.R. at 73 n.4.

This Court is persuaded by the reasoning of the court in Burbank. The holding in Burbank is consistent with earlier decisions examining means test deductions in both Chapter 13 and Chapter 7 cases and reflects this Court's view that the expense side of the disposable income equation is not susceptible to the realistic approach. *See* In re Mati, 390 B.R. 11 (Bankr. D. Mass. 2008)(Chapter 13 debtor is entitled to ownership expense for vehicle owned outright under 11 U.S.C. § 707(b)(2)(A)(ii)(I)); In re Phillips, 382 B.R. 153 (Bankr. D. Mass. 2008)(Chapter 13 debtor is entitled to standard housing deduction under 11 U.S.C. § 707(b)(2)(A)(ii)(I) even though her monthly rent was less than standard deduction); In re Guerriero, 383 B.R. 841 (Bankr. D. Mass. 2008)(Chapter 7 debtors are allowed to reduce "current monthly income" by amount of payments to mortgagee where they have indicated their intention to surrender property). *See also* In re Lane, 394 B.R. 248 (Bankr. D. Mass. 2008)(Chapter 13 debtor may claim phantom ownership expense on vehicle owned outright); In re Young, 392 B.R. 6 (Bankr. D. Mass. 2008) (same); In re Hayes, 376 B.R. 55 (Bankr. D. Mass.2007) (Chapter 7 debtors were entitled to deduct from their current monthly income the monthly average of the mortgage payments which they

were contractually obligated to make on date petition was filed over the next 60 months, without regard to whether they intended to surrender the mortgaged property); In re Hartwick, 359 B.R. 16 (Bankr.D.N.H.2007) (same). *But see* In re Coffin, 396 B.R. 804 (Bankr. D. Me. 2008) (Chapter 13 debtor was not entitled to deduct phantom ownership expenses for vehicles owned outright).

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining in part and overruling in part the Chapter 13 Trustee's Objection to the Debtors' amended Chapter 13 plan. The Debtors' amended Chapter 13 plan is miscalculated, and, accordingly, the Debtors must file a further amended plan. The Debtors, however, may claim a deduction for "contractually due" payments to Chase, although, as the court in Burbank recognized, a motion for plan modification under 11 U.S.C. § 1329 may be filed to reflect the Debtors' actual financial situation. Finally, the Court shall enter an order overruling the Chapter 13 Trustee's bad faith objection. In view of the $96.22 per month discrepancy between the Debtors' disposable income calculation on Official Form 22C and Schedules I and J, the Court cannot find extraordinary circumstances warranting a finding of bad faith.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: June 9, 2009
cc: Lee S. Kaplan, Esq., Carolyn Bankowski, Esq., U.S. Trustee