UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PAUL V. MARSHALL** and                    Chapter 13
**KATHLEEN KENNEY-MARSHALL**,               Case No. 08-16022-JNF
     Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Debtors' "Motion to Convert to Chapter 13" pursuant to which they seek to convert their Chapter 7 case to a case under Chapter 13. The Chapter 13 Trustee has filed an Objection to the Motion.

### II. UNDISPUTED FACTS

The Debtors filed a petition for relief under Chapter 13 on August 12, 2008. Approximately 14 months later, on January 5, 2010, this Court entered an order confirming the Debtors' Amended Chapter 13 Plan.[1] On September 18, 2013, the Chapter 13 Trustee filed a Motion for Order Dismissing Case alleging that the Debtors owed $21,798.00 to complete the expired confirmed plan. On April 17, 2014, the Debtors moved to convert their Chapter 13 case to a case under Chapter 7, which motion was granted. One day later, on April 18, 2014, Joseph G. Butler was appointed the Chapter 7 Trustee.

---

[1] The confirmation order provided that the effective date of confirmation of the plan was September 1, 2008. It further provided that "As of August 1, 2008, the Debtors have paid $1,062.00 to the Trustee. Commencing September 1, 2009, the Debtors shall make plan payments in the sum of $1,659.00 for the remaining 47 months of the plan."

1

The Chapter 7 Trustee conducted the meeting of creditors on August 5, 2014, and, on August 8, 2014, he filed a Report of No Distribution. Approximately seven weeks later, on September 29, 2014, the Debtors received a discharge. On October 3, 2014, the Court entered an order discharging the Chapter 7 Trustee and closing the case.

On March 8, 2017, the Chapter 7 Trustee filed a Motion to Reopen Case pursuant to 11 U.S.C. § 350(b), representing that he had "recently been informed of the existence of an asset of the estate, a tort claim of Ms. Kathleen Kenney-Marshall, which was not scheduled and not administered prior to the closing of the case." The Chapter 7 Trustee then withdrew his Report of No Distribution. On September 4, 2018 he filed an application to retain special counsel to represent him with respect to a claim of personal injury related to a product liability claim against a product manufacturer.[2]

### III. POSITIONS OF THE PARTIES

A. The Debtors

The Debtors, who initially filed a Chapter 13 case which they converted to Chapter 7, now seek to re-convert their Chapter 7 case to a case under Chapter 13. While admitting that they converted their Chapter 13 case to Chapter 7 following the filing of a Motion to Dismiss by the Chapter 13 Trustee, they complain that they were not advised

---

[2] The Chapter 13 Trustee represents: "In May of 2018, the Chapter 13 Trustee received information from Debtors' counsel that the asset that the Chapter 7 Trustee had discovered which led to the reopening of the Chapter 7 case was that Debtor Kathleen Kenney-Marshall had settled a medical malpractice tort action and received a settlement of approximately $200,000.00."

2

by their prior counsel that they could seek a hardship discharge or modify a wholly unsecured second mortgage. They argue as follows:

> It is equitable to allow this case to be converted. The Debtors have tried to the best of their ability to comply with the requirements of the bankruptcy system to obtain a discharge of their second mortgage. It is only through the inaction of JP Morgan Chase for four years that the debtors have been making payments for over four years on a home they may not be able to otherwise afford. If JP Morgan Chase had issued a single bill over the past few years, the Marshalls would have never been in this position.

B. The Chapter 13 Trustee

The Chapter 13 Trustee, in her Objection, represents that the Confirmation Order entered on January 5, 2010 provided that the Debtors had paid a total of $1,062.00 as of August 1, 2008, would pay $1,659.00 per month for the remaining 47 months of their plan and would pay a dividend to unsecured creditors of no less than 36.32%. She adds that the Confirmed Plan expired on July 1, 2013 and that the Debtors failed to complete the confirmed plan. Accordingly, on September 18, 2013, the Chapter 13 Trustee filed a Motion for Order Dismissing Case alleging that the Debtors owed $21,798.00 to complete the expired confirmed plan.[3]

---

[3] According to the Chapter 13 Trustee,

> On October 9, 2013, the Debtors filed an Opposition to the Trustee's Motion to Dismiss alleging that payments were tendered that were not credited and that they would cure all arrears once the amount due was determined. A hearing was scheduled for November 7, 2013, and then was continued numerous times at the request of the Debtors' counsel in order to allow the Debtors additional time to make the final payment under the expired plan. . . . By the time of the final continued hearing on April 17, 2014, the Debtors had made two (2) payments after the Motion to Dismiss was filed totaling $1,700.00, but still owed $20,098.00. The Debtors were unable to provide any evidence of payments that were made but not credited and were unable

The Chapter 13 Trustee prefaces her Objection by observing that the Debtors' Motion "does not refer to the settlement funds but refers to a second mortgage that would have been stripped had the Debtors completed the chapter 13 plan." Citing Shovlin v. Klaas (In re Klaas), 548 B.R. 414 (Bankr. W.D. Pa. 2016), *aff'd,* 555 B.R. 500 (W.D. Pa. 2016), *aff'd*, 858 F.3d 820 (3d Cir. 2017) (a Bankruptcy Court may grant a Chapter 13 debtor a brief grace period following five-year term to complete plan payments, and if a debtor makes final payment during that grace period, the payment is under the plan as required for the Bankruptcy Court to grant the debtor a completion discharge), and Winnecour v. Klaas, 533 B.R. 482 (Bankr. W.D. Pa. 2015), *aff'd* 539 B.R. 465 (W.D. P. 2015), *aff'd*, 858 F.3d 820 (3d Cir. 2017) (46-day delay in completing chapter 13 plan was reasonable), she states that she "gave the Debtors a reasonable amount of time to complete the plan," adding "[a] shortfall in plan payments may be cured within *a reasonable time* (emphasis added) after the 60th payment at the discretion of the bankruptcy court." She objects to reconversion because it has been more than 10 years since the petition was filed and more than five years since the confirmed Chapter 13 plan expired. In her view, the Debtors are seeking to convert to Chapter 13 in an attempt to complete their expired plan, a length of time that is not, and cannot be, considered reasonable.

---

to make the final payment and as a result on April 17, 2014 the Debtors filed a Motion to Convert to Chapter 7. That motion was allowed the same date and the case was converted to chapter 7 at that time.

4

The Chapter 13 Trustee, citing 11 U.S.C. §1329(c), also avers that the Debtors cannot propose a new plan and cannot modify the confirmed plan. In short, she maintains re-conversion is futile. She concludes:

> [I]t appears that one of the reasons for conversion is to prevent the Chapter 7 Trustee from administering the settlement proceeds. The Trustee asserts that this is not a good faith basis to request a conversion back to chapter 13, especially in light of the fact that the Debtors' plan cannot be modified and/or completed and therefore there is no legitimate purpose to converting back to chapter 13. *See* Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007) (Converting a bankruptcy case pursuant to 11 U.S.C. §706(a) was not mandatory, but rather, permitted a bankruptcy court to exercise some discretion).

## IV. ANALYSIS

The Court denies the Debtors' Motion to Convert to Chapter 13 for the reasons stated in the Chapter 13 Trustee's Objection. As the Chapter 13 Trustee correctly notes, § 1329(c) precludes the relief requested by the Debtors.[4]

> Section 1329(c) mandates that a modification "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time." 11 U.S.C. § 1329(c). A modified plan may not, therefore, extend more than five *years from the due date of the first*

---

[4] Section 1329(c) provides:

> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c).

*payment under the original confirmed plan.* 8 Collier on Bankruptcy ¶ 1329.07 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.2015).

In re Dennett, 548 B.R. 733, 736–37 (Bankr. N.D. Tex. 2016) (emphasis supplied).

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Debtors' Motion to Convert to Chapter 13.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 20, 2018

6